```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Herbert Leroy Grate II,           :

         Plaintiff,               :

    v.                            :    Case No. 2:14-cv-200

                                  :    JUDGE MICHAEL H. WATSON
Commissioner of Social Security,       Magistrate Judge Kemp
                                  :
         Defendant.
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Herbert Leroy Grate II, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Those applications were filed on September 14, 2010, and alleged that Plaintiff became disabled on November 22, 2002.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on September 19, 2012. In a decision dated October 18, 2012, the ALJ denied benefits. That became the Commissioner's final decision on December 31, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on May 22, 2014. Plaintiff filed his statement of specific errors on June 23, 2014, to which the Commissioner responded on September 26, 2014. No reply has been filed, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 45 years old at the time of the

administrative hearing and who has a high school education along with two years of college, testified as follows.  His testimony appears at pages 49-67 of the administrative record.

Plaintiff was last employed in a business owned by his uncle.  He had a "desk job" involving scheduling work and acting as a liaison between workers and management.  He had been asked to leave work occasionally either for anger issues or because he had been drinking.  He also had some physical limitations due to problems with his knee, back, and hip.  Before that, he owned his own baseball card shop.  He had been sober since 2007.

When asked about his mood, Plaintiff replied that it did not take much to make him angry.  He had assaulted others and had been jailed for doing so.  He had been taking medication for psychological issues since his teens, but at the time of the hearing was not attending counseling because he could not afford it.  He had been prescribed a cane after surgery in the 1980s. He did few household chores and only left his home to go to medical appointments.

On a typical day, Plaintiff would have difficulty either sitting or standing for very long.  He attributed some of those difficulties to swelling in his knees and pain in his legs, hips, and back.  He alternated positions to try to get comfortable. Mostly, he watched television.  Plaintiff did socialize with his parents, who lived next door to him, and his younger son.  He was not able to go grocery shopping due to his health constraints.

### III.  The Medical Records

The medical records in this case are found beginning on page 320 of the administrative record.  The pertinent records - those which relate to the claims raised by Plaintiff in the Statement of Errors - can be summarized as follows.

Plaintiff went to the emergency department at Camden Clark Memorial Hospital in Parkersburg, West Virginia, on April 14,

2007, complaining of chest pain.  He had had a seizure the day before and also had a long history of alcoholism.  He was then involuntarily admitted to Fairmont General Hospital for treatment of alcohol dependence and depression.  Five days later, he was discharged on medication and with orders to follow up for management of his condition.  Treatment notes from the hospital state that Plaintiff began drinking at age 13 and that his drinking had escalated in the past four months.  He also had a remote history of cocaine use.  The admitting impressions included, among other things, social phobia with agoraphobia. (Tr. 335-68).

Dr. Sarver, a clinical psychologist and neuropsychologist, performed a consultative examination on October 25, 2010.  Plaintiff reported having been in alcohol rehabilitation when he was 18 and again at age 40.  He had been sober for over three years, however.  He claimed to be unable to work due to physical impairments.  Plaintiff's affect was described as "broodingly resentful and disgruntled."  He said he had recently lost weight and had difficulty sleeping.  His memory appeared intact.  Dr. Sarver thought Plaintiff would have difficulty organizing, structuring, and working towards goals and containing his anger and frustration.  He rated Plaintiff's GAF at 50, based on an adjustment disorder with mixed anxiety and depressed mood and a personality disorder, and found a marked impairment in dealing with others and in managing daily work stress.  (Tr. 373-79). Dr. Sarver did a second evaluation on May 26, 2011, at which he described Plaintiff's mood as subdued but tense, anxious, and socially awkward.  Dr. Sarver also noted "motoric indications of anxiety with tremors of the hands" and reported that Plaintiff was using marijuana on a daily basis.  He again rated Plaintiff's GAF at 50 and concluded that Plaintiff would "eventually encounter contentious relationships with supervisors and

coworkers in the work setting" and was "likely to have consistent difficulty dealing with normative work pressures." (Tr. 407-14).

Dr. Padamadan also performed a consultative examination, focused on Plaintiff's physical condition. In his report, dated December 30, 2010, Dr. Padamadan said that Plaintiff described a life-long history of low back pain, for which he did not take medication, and which limited him to standing for more than thirty minutes at a time. After examining Plaintiff, Dr. Padamadan concluded that it was a "normal" physical examination and he did not diagnose any conditions that were accompanied by functional impairments except a lifting restriction of less than twenty pounds. (Tr. 384-86). Six months later, Dr. Nutter performed a similar evaluation, noting that Plaintiff complained of constant back and neck pain with radiation into his leg and arm. He also had periodic chest pain and shortness of breath with a chronic cough, as well as left knee pain. Range of motion testing produced knee and back pain and Plaintiff cold not squat. His movements were slow and painful. Dr. Nutter's impression was chronic cervical and lumbar pain, chest pain, COPD, and degenerative arthritis. He recommended that Plaintiff avoid squatting, climbing ladders or scaffolding, or working in other areas where good balance was needed, and thought Plaintiff was moderately to severely impaired in various physical abilities such as bending, stooping, lifting, walking, crawling, carrying and traveling as well as pushing and pulling heavy objects. (Tr. 415-19).

In addition, state agency physicians reviewed the records and expressed opinions about Plaintiff's limitations. Dr. McCloud thought Plaintiff could do medium work without other limitations; Dr. Waddell concluded that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors and in working in

coordination or proximity to others, as well as to complete a normal workday or work week without interruption from psychologically-based symptoms and to perform at a consistent pace.  Also, he was markedly limited in his ability to deal with the public.  Dr. Waddell limited Plaintiff to tasks not requiring much interaction with others. (Tr. 78-90).

## IV.   The Vocational Testimony

Cecilia Thomas was the vocational expert in this case.  Her testimony begins on page 67 of the administrative record.

Ms. Thomas testified that Plaintiff's prior work appeared to be skilled and light, although he may have performed some of it at the medium level.  She was then asked some questions about a hypothetical person who had Plaintiff's educational and work history.  That person could work at the medium exertional level and could occasionally climb ramps, stairs, ladders, ropes, and scaffolds as well as occasionally balance stoop, kneel, crouch, and crawl.  The person also had to avoid concentrated exposure to extremes of temperature, wetness, humidity, fumes, odors, dust, gas, poor ventilation, and hazards such as moving machinery and unprotected heights.  The person could also perform simple, routine and repetitive tasks with no fast-paced requirements and in a structured environment with only occasional changes in the work setting or interactions with others.  Ms. Thomas testified that someone with those limitations could not do any of Plaintiff's past work.

The ALJ next asked if someone with those restrictions could do other jobs.  In response, Ms. Thomas identified medium positions like cleaner, janitor, dining room attendant, and photocopy machine operator.  She also described light jobs like cafeteria worker, cleaner, and housekeeper as positions such a person could hold.  Use of a cane would rule out most of the light jobs, but there were sedentary jobs like surveillance

system monitor and document preparer that were consistent with the use of a cane.

Additionally, Ms. Thomas testified that someone who was off task for 20% of the day would find it difficult to keep employment.  So would someone with a marked impairment in dealing with work stress or getting along with others.

### V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 18-33 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006.  Second, Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 22, 2002.  Next, he found that Plaintiff suffered from severe impairments including spina bifida, asthma, depression, and anxiety disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level but that he could only occasionally climb ramps and stairs, bend, stoop, kneel, crouch, and crawl, and could never climb ladders, ropes, or scaffolds.  Also, he could not tolerate concentrated exposure to cold, heat, wetness, fumes, odors, dusts, gases, pulmonary irritants, vibration, and hazards.  Further, he was limited to simple, routine, repetitive tasks in an occupation requiring no fast pace or strict production quotas, and only occasional changes in the work setting, with only occasional interaction with the public and coworkers.  The ALJ found that, with these

restrictions, Plaintiff could not perform his past relevant work but that he could do those jobs identified by Ms. Thomas. Finally, the ALJ determined that those jobs existed in significant numbers in the regional economy and in the national economy.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) whether the case should be remanded under 42 U.S.C. §405(g), sentence six, for consideration of new and material evidence; and (2) whether the ALJ made a proper credibility determination.  The Court analyzes the second claim under the following standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human

Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A.  Sentence Six Remand

The Social Security Act provides that the Court may remand a case for further consideration of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. §405(g), sentence six. The plaintiff has the burden of proof on the issue of whether a sentence six remand is appropriate. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).

To show good cause, Plaintiff must present some justification for the failure to have acquired and presented such evidence for inclusion in the record during the hearing before the Administrative Law Judge. Id. And "[i]n order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of HHS, 865 F.2d 709, 711 (6th Cir. 1988). New evidence on an issue already fully considered is cumulative, and is not sufficient to warrant remand of the matter. Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir. 1980). Additionally, the new evidence must relate to a condition which affected the plaintiff's ability to work at the time the administrative decision was made. Evidence concerning a newly-developed medical condition is not ordinarily relevant to the question of whether the plaintiff was disabled at the time the Secretary's decision was entered. Oliver v. Secretary of HHS, 804 F.2d 964, 966 (6th

Cir. 1986); see also Wilson v. Comm'r of Social Security, 2011 WL 2607098, *6 (E.D. Mich. July 1, 2011) (new evidence to support a sentence six remand "must ... be probative of the claimant's condition for the time period for which benefits were denied").

Here, the new evidence upon which Plaintiff relies is a psychological evaluation done by Dr. Goudy, a psychologist, on September 27, 2012. At the request of Plaintiff's counsel, Dr. Goudy conducted a clinical interview and a mental status examination and also administered some depression tests.

According to the report, Plaintiff stated that he suffered from depression, anxiety, and obsessive-compulsive traits. He also experienced problems with low energy and with sleep. He had memory issues as well. Plaintiff had tension headaches and was always fidgeting and worrying about things. He described washing his hands up to 100 times per day. Dr. Goudy summarized records from Dr. Sarver's prior evaluations and from the 1985 and 2007 psychiatric hospitalizations.

Plaintiff said he had not had alcohol since 2007 but occasionally smoked marijuana. He had a history of involvement with the legal system. He appeared uncomfortable throughout the interview. His recent memory was moderately impaired and his concentration was poor. The tests which Dr. Goudy administered indicated severe levels of depressive symptoms and of anxiety symptomatology. Dr. Goudy diagnosed a depressive disorder and a generalized anxiety disorder as well as an obsessive-compulsive personality disorder ("per patient's report") and schizoid personality traits. He rated Plaintiff's GAF at 50-55 and thought that Plaintiff was mildly impaired in his activities of daily living, moderately impaired in his social functioning, markedly impaired in his concentration, persistence, and pace, and that he had had two episodes of decompensation, one in 1985 and another in 2007. He pointed out that on Plaintiff's last insured date, he was an active alcoholic, but he would have had "significant psychopathology" at that time even without the use of alcohol. Finally, Dr. Goudy completed a mental assessment

form indicating a marked impairment in Plaintiff's ability to deal with work stress, function independently, and maintain attention and concentration, as well as to behave in an emotionally stable manner and to complete a workday or work week without interruption from psychologically-based symptoms. (Tr. 475-84).

Plaintiff argues that Dr. Goudy's report was "new" because he examined Plaintiff after the administrative hearing, and neither the ALJ nor the Appeals Council considered the evidence. He also asserts that it is "material" since it speaks to his mental impairment and was based on objective test results, something allegedly not found in Dr. Sarver's prior reports. Further, Plaintiff insists that the new report would likely have influenced the weight which the ALJ gave to Dr. Sarver's findings, since it corroborated those findings and provided objective support for them.  Conversely, the Commissioner contends that Plaintiff has not shown good cause for failing to arrange for Dr. Goudy's examination prior to the closure of the administrative record, and that the evidence is not material because Dr. Sarver's similar conclusions were rejected based on Plaintiff's lack of credibility - something that did not change once Dr. Goudy prepared his own report.

As the Commissioner correctly notes, Plaintiff's statement of errors does not contain any explanation of why the examination by Dr. Goudy could not have been arranged in time for his report to have been submitted before the record was closed.  Further, as the Commissioner's memorandum points out, the record was held open for a time after the administrative hearing (until September 28, 2012) so that Plaintiff could submit some additional school and hospital records.  (Tr. 45).  Dr. Goudy performed his evaluation the day before that deadline, so Plaintiff was clearly aware while the record was still open that a report was coming, yet he did not ask the ALJ for any additional time to submit it. He did ask for another week to submit the school and hospital records (Tr. 316) but again made no mention of a forthcoming

-10-

report from Dr. Goudy. All of these facts are inconsistent with the proposition that Dr. Goudy's report is "new," that is, that there was good cause for its late submission.

Binding Court of Appeals precedent supports this conclusion. <u>Bass v. McMahon</u>, 499 F.3d 506, 513 (6th Cir. 2007) rejected a claim that certain evidence qualified as "new" in the context of a request for a sentence six remand since "plaintiff's counsel did not seek to have the record remain open to submit the evidence here provided, which in and of itself shows a lack of good cause." And in <u>Courter v. Comm'r of Social Security</u>, 479 Fed. Appx. 713, 725-26 (6th Cir. May 7, 2012), the Court of Appeals recognized that it has taken a "'harder line on the good cause' test [and] requires that the claimant 'give a valid reason for his failure to obtain evidence prior to the hearing,'" <u>quoting Oliver, supra</u>, at 966, and that the excuse that the claimant could not have anticipated the need to make out a better case until the ALJ ruled against him was "frivolous." Plaintiff has not proffered that explanation here, but on the other hand, he has given no explanation at all for the delay in arranging for this examination or the failure to ask the ALJ to keep the record open so it could be considered. Under these circumstances, there is no basis for ordering a sentence six remand. <u>See also Kyle v. Comm'r of Social Security</u>, 2013 WL 5925777, *11 (S.D. Ohio Oct. 31, 2013) ("Plaintiff is not entitled to a sentence six remand because he cannot establish good cause for his failure to present the evidence to the ALJ"), <u>adopted and affirmed</u> 2013 WL 6592324 (S.D.Ohio Dec. 16, 2013). It is therefore unnecessary to reach the question of whether the newly-proffered evidence was also material.

### B. <u>The Credibility Finding</u>

The only other issue Plaintiff raises in his statement of errors is that the ALJ did not properly evaluate his credibility. He contends that the ALJ failed to follow Social Security Ruling (SSR) 96-7p by not considering all of the factors set forth in that ruling, and that the ALJ failed to consider the record as a

whole, focusing instead on a few factors which did "not reasonably portray the reality of the claimant's circumstances." Statement of Errors, Doc. 13, at 16.

A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record.  <u>See, e.g. Felisky v. Bowen</u>, 35 F.3d 1027 (6th Cir. 1994).

The Court finds that the ALJ met this standard.  He clearly considered the record in its entirety in finding Plaintiff to be less than fully credible.  He cited to substantial inconsistencies in Plaintiff's own report of his limitations (which got progressively more severe as time passed despite the lack of increased treatment) concerning both Plaintiff's physical capabilities and his mental functioning.  (Tr. 29).  Plaintiff does not dispute the existence of these inconsistent reports. The ALJ also cited to Plaintiff's minimal work history and the fact that evidence indicated that some of his workplace difficulties were due to strained family relationships which improved once he stopped working in the family business.  (Tr. 30).  These are all legitimate factors to be taken into account. Plaintiff does not cite to any part of the record which, in his view, the ALJ ignored, nor does he argue that the reasons given by the ALJ are not supported by the evidence or are illegitimate bases on which to discount his testimony of disabling symptoms.

Under these circumstances, there is no legal ground for this Court to disturb the ALJ's credibility finding, which is due substantial deference on review.  See Chandler v. Comm'r of Social Security, 2014 WL 2988433, *11 (S.D. Ohio July 1, 2014)("Given the amount of deference owed to the ALJ's resolution of credibility issues, and the fact that the ALJ's reasoning process in this case is supported by the evidence, the fact that other evidence might also have supported the opposite conclusion is not determinative").  Thus, there is no basis in this case for either a sentence four or a sentence six remand.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District

Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                      <u>/s/ Terence P. Kemp</u>
                                      United States Magistrate Judge